UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Val Bernard Stanger, | Civil No. 14-3254 (ADM/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

_____

Carol Louise Lewis for Plaintiff.
D. Gerald Wilhelm, Assistant United States Attorney, for Defendant.

_____

Plaintiff Val Bernard Stanger seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner"), who denied his application for benefits under Title II of the Social Security Act. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court has jurisdiction over the claim pursuant to 42 U.S.C. § 405(g), 28 U.S.C. § 636(c), and Rule 73 of the Federal Rules of Civil Procedure. The parties have submitted cross-motions for summary judgment. *See* ECF Nos. 15 and 17. For the reasons set forth below, the Court recommends that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED WITH PREJUDICE**.

## I. INTRODUCTION

Stanger filed an application for Social Security Disability Insurance ("SSDI") on February 17, 2011. Administrative Record [hereinafter "AR"] 56, ECF No. 13. Stanger alleged that he was disabled between August 11, 2008 (his alleged onset date), and June 30, 2010 (the date last insured). *Id.* Stanger's application was denied initially and again on reconsideration. *See* AR 56, 130, 136.

After holding an administrative hearing on October 30, 2012, Administrative Law Judge ("ALJ") Diane Townsend-Anderson denied Stanger's applications for disability insurance benefits ("DIB"). AR 66. On June 25, 2014, the Appeals Council denied Stanger's request for review, rendering the ALJ's decision final for purposes of judicial review. AR 1–5; *see* 20 C.F.R. § 404.981. Pursuant to 42 U.S.C. § 405(g), Stanger commenced this civil action on August 25, 2014, seeking a remand for further proceedings. Compl., ECF No. 1.

## II. FINDINGS OF FACTS

### A.    Background

Stanger was 42 years old when he filed his application for DIB. AR 56, 184. Stanger argues that the following conditions limit his ability to work: pancreatitis, renal calculus, spondylosis, coronary artery disease, back and shoulder pain, obesity, diabetes, degenerative joint disease, and arthritis in his left knee. ECF No. 16 at 2–4. Stanger has vocational training in plumbing. AR 81. His past relevant work include jobs as plumber, warehouse driver, laborer, and automobile mechanic. AR 107–108.

### B.    Medical Evidence

#### 1.    Medical Records

Stanger has failed to provide any medical records from his alleged onset date until January, 2009. *See* ECF No. 16 at 2. Stanger is 5'8" and has had a stable weight of 308 pounds for the past fifteen years. AR 85. His medical records show that Stanger weighed 325 pounds in March 2009, 285 pounds in May 2009, and 312 pounds in March 2010. AR 344, 333, 495.

Stanger has a record of sleep apnea and his primary care doctor, Dr. Lofgren, noted that as of November 21, 2012, Stanger had seen sleep health doctors and was considering treatment. AR

1118. Stanger was not using a CPAP machine in either January 2009 or January 2010. AR 605, 633. The records do not show that Stanger has been receiving treatment for sleep apnea during the alleged period of disability.

Stanger was diagnosed with type II diabetes mellitus ("DM") in 2001. AR 83. Stanger's treatment plan has included diabetic medication, including oral agents and insulin. AR 1118. In December 2008, Dr. Lofgren examined Stanger after complaints of back pain, and he discovered decreased light touch sensation in his feet. AR 895. In August 2009, Dr. Lofgren advised Stanger that he had to watch his diet more closely in controlling his DM. AR 607. As of May 2010, however, Stanger's DM tests appeared normal. AR 930.

Stanger has received conservative treatment to manage his back pain (e.g., injections and use of radiofrequency). AR 634. In January 2009, Stanger received physical therapy, injections, and testing for his back pain. AR 634. His medical records indicate that in 2009, straight leg raises were negative and deep tendon flexes were normal. AR 634–35. Stanger's 2009 MRI scan also showed chronic L5 bilateral pars defect with pseudoarthritis and osteophyte formation, trace L4–5 facet joint effusion, and disc dessication throughout the lumbar spine. AR 500. In March 2010, Stanger denied radiation or lateralization of his symptoms and was treating his pain with over-the-counter analgesics. AR 494. In April 2010, Stanger received medial branch blocks followed up with radiofrequency ablation. AR 845. As of July 2010, Stanger reported to Dr. Lofgren that he felt improvement in his back pain from the treatment. AR 582.

Stanger has a history of knee problems, including right knee arthroscopy for cartilage injury and a July 2010 x-ray indicating medial joint space narrowing in both of his knees. However, by November 2010 he had minimal limitations involving his knees. AR 378, 560, 564, 569, 580. Even

as of July 2010, Stanger reported that he engaged in activities such as hunting. AR 564. His examination in November 2010 showed full range of motion with discomfort at full flexion, moderate tenderness to palpation along the medial joint line, positive flexion rotation and McMurray's testing for pain within medial joint line, and normal stress testing. AR 521. His x-rays and MRI resulted in Stanger having a partial medial menisectomy in December 2010 to treat tearing of the meniscus, osteoarthritic changes, and mild chondromalacia. AR 507–508, 522. Stanger showed improvement and was walking with a normal gait within six weeks of surgery. AR 528. While it appears that Stanger's left knee problems worsened after June 30, 2010, this was outside of the alleged period of disability. AR 63.

Although Stanger has complained of chest pains and has had some history suggestive of congestive heart failure, he has not received any treatment for any cardiac conditions. As of September 2009, a Lexiscan infusion revealed negative EKG, normal LV function, and probable normal myocardial perfusion study. AR 381. Additionally, Stanger was treated for kidney stones. AR 338.

Finally, Stanger was diagnosed and received treatment for pancreatitis throughout 2009. *See* AR 331–32, 338, 364, 366, 444. After receiving a small stent for suspected pancreatic divisum in August 2009, the claimant has reported no subsequent problems nor received additional treatment for pancreatitis. AR 375, 380–81.

### 2. State Agency Non-Examining Medical Consultant Reports

State agency medical consultant Dr. William Bolz, M.D., opined that Stanger could occasionally lift and/or carry up to 50 pounds; frequently lift and/or carry up to 25 pounds; stand and/or walk for a total of six hours per workday; and sit for six hours in a workday. AR 105–106.

Dr. Bolz also stated that Stanger was limited in his ability to push and/or pull with his lower extremities and had postural limitations. AR 106. Specifically, he opined that Stanger should be limited to only occasional climbing ladders, stooping, crouching, and crawling. *Id.* However, Dr. Bolz opined that Stanger could frequently climb ramps and could do unlimited balancing. *Id.* Dr. Bolz noted no manipulative, visual, communication, or environmental limitations. *Id.* Dr. Bolz concluded that Stanger was not disabled.

State agency medical consultant Dr. Charles T. Grant, M.D., also reviewed Stanger's medical records and concluded that he was not disabled. AR 121. Dr. Grant opined that Stanger could occasionally lift and/or carry up to 20 pounds; frequently lift and/or carry up to 10 pounds; stand and/or walk for a total of six hours per workday; and sit for six hours in a workday. AR 118. Dr. Grant also stated that Stanger was limited in his ability to push and/or pull with his lower extremities and had postural limitations. *Id.* Specifically, he opined that Stanger should be limited to only occasional climbing ladders and ropes, stooping, crouching, and crawling due to cervical disorders of back-discogenic and degenerative ("DDD") back, knee pain, and obesity. *Id.* at 118–19. However, Dr. Grant opined that Stanger could frequently balance. *Id.* Dr. Grant also noted no manipulative, visual, communication, or environmental limitations. *Id.* at 119.

### 3. Treating Physician Opinion

In a letter dated November 21, 2012, Dr. Lofgren wrote that Stanger suffers from uncontrolled diabetes, obesity, neuropathy, lumbar and cervical DDD, extremity weakness, undiagnosed thyroid illness, sleep apnea, and anxiety. AR 1118. Dr. Lofgren wrote that "the basis of the diagnosis is my medical exam and relevant laboratory findings and other diagnostic tests." *Id.* Dr. Lofgren further wrote that despite a treatment plan of oral agents insulin, physical therapy

by pain specialists and sleep doctors,"Stanger's underlying medical conditions severely limit his activity and he is not able to work . . . [and Stanger's] prognosis for recovery is limited." AR 1118.

## C. The Administrative Hearing

The administrative hearing was held on October 30, 2012. AR 56, 76–99. Stanger was represented by counsel and testified on his own behalf. AR 56, 80–92. Paul Dickenson, MD, a medical expert, and William Rutenbeck, a vocational expert, also testified at the hearing. AR at 93–99.

### 1. Stanger's Testimony

Stanger first testified to his living situation during his alleged period of disability. Stanger lived with his parents and his fourteen year old son, Alex. AR 80. Stanger has full custody of his son and receives some child support from his son's mother. *Id.* Stanger has a GED and vocational training in plumbing. AR 80–81. Stanger helps his son with homework and attends his son's school activities. AR 81–82. Stanger does chores around the house, such as fixing up machinery, vacuuming, cleaning, cooking meals in the microwave, helping with small to medium loads of laundry, and going grocery shopping. AR 82–83, 87–88. While helping around the house, Stanger must frequently rest. AR 82. Stanger will check his emails on the computer and watch about four hours of television daily. *Id.* He also enjoys going for joyrides in his car. AR 82–85. Stanger cannot drive for longer than an hour because of his back pain. AR 90. Stanger also stated that he can sit in a padded office chair for about 45 minutes before needing to stand up to manage his back pain. AR 90. When he is feeling up to it, Stanger will also go for a walk. AR 82. Stanger will walk about a block before his back and knee pain require him to rest for about ten minutes. AR 82, 89.

Stanger was diagnosed with diabetes while he was in prison in 2001. AR 83. He tests his

blood sugars between three and four times per day. AR 84. Stanger's diabetes gives him anxiety and blurred vision, and when his blood sugar is low he gets shaky and sweaty. AR 89. His blood sugar is either high or low once per day. *Id.* Stanger also testified to having some chest pains that he believed medication would improve. AR 85.

Stanger receives injections and has had arthroscopic surgery on his knee. AR 85. Stanger also stated that he suffers from lower back pain which is treated with injections and radio frequency. AR 86. During the hearing, Stanger testified that he had surgery for right carpal tunnel release the week before the hearing and has been recommended to do the same on his left hand. AR 91–92. Stanger stated that since 2008, he has been frequently hospitalized for kidney stones and for pancreatitis, for which he received a stent placement. AR 92.

According to Stanger, after getting laid off from his job as a plumber in 2008, he started receiving unemployment benefits. AR 86–87, 119. As of the date of the hearing, Stanger claimed that he had not sought out employment for at least the past five years that he had been on county assistance. AR 87.

    **2.**    **Medical Expert Testimony**

Stanger stipulated to Dr. Paul Dickenson's expert qualifications as a neutral medical expert ("ME"). The ME testified that Stanger has suffered with pancreatitis but has had no recurrences since he had a stent placement in 2009. AR 93. He stated that Stanger's 2009 evaluation for chest pain was normal and showed no ischemia. *Id.* He also stated that Stanger has renal calculi with the most recent on record from 2009. *Id.* According to the ME, Stanger has osteoarthritis of the knees and had an arthroscopy with partial menisectomy on his left knee in December 2010. AR 93. The ME also stated that Stanger is insulin dependant for his diabetes type II and is morbidly obese. AR

93. With respect to Stanger's back pain, the ME testified that treatment has provided variable, but not lasting benefits. This treatment included: "land and pool based [physical therapy], transforaminal steroid injection, bilateral median branch nerve block, radio frequency denudation of the branch nerves, and bilateral facet injections." AR 93–94.

In the ME's opinion, Stanger did not meet any of the Appendix 1 listings for physical impairments. AR 94. The ME opined that if Stanger were to work, he would have some lift and carry limitations, as well as limitations with use of both his hands for only occasional handling and fingering. *Id.* The ME further stated that Stanger could sit for a total of six hours per day but no longer than two hours at a time, with the ability to get up at will. The ME also opined that Stanger should not be required to stand for more than two hours in a day; should not be required to stoop, kneel, crouch, or crawl; occasionally climb stairs or ramps; but never climb ladders or scaffolds. *Id.* Finally, the ME limited Stanger from unprotected heights altogether and only occasionally moving mechanical parts or operating of a motor vehicle. *Id.*

### 3.    Vocational Expert's Testimony

The ALJ posed the following hypothetical to the vocational expert ("VE"):

> Assume a similar individual who at alleged onset is 42 . . . [w]ho has a GED education, work experience as outlined at 24E who is impaired with pancreatitis with stent placements, suffers from sleep apnea, has been worked up for coronary artery disease with only normal findings, who suffers from diabetes, degenerative joint disease of the knees, status-post arthroscopic surgery on the left, Has [sic] had a recent carpal tunnel release and the syndrome in the left, suffers from degenerative back, degenerative disk disease of the back, obesity, renal disorder. Said individual is limited to lifting and carrying 20 pounds occasionally, 10 pounds frequently, can do all functional aspects of light work, however the individual would be limited to work where there'd be only occasional finger, feeling and handling. Where there would be no stooping, kneeling, crawling, heights, ladders, scaffolding, dangerous or hazardous equipment and machinery. And for this first hypothetical would have the ability to change position at will through the day.

AR 95. The ALJ then asked the VE if such an individual could perform the kind of work Stanger had previously performed. *Id.* The VE opined that such an individual could not perform Stanger's past work. *Id.*; AR 119–20. However, the VE opined that where such an individual would have the ability to change position throughout the day with occasional handling and fingering, there were transferable skilled to unskilled, light work jobs available that were consistent with DOT Code 372.667–030. AR 95–96. The VE stated that there are unarmed security guard positions that are consistent with this and 2,500 such jobs exist in Minnesota. AR 96.

> The ALJ then posed the following hypothetical to the VE:
>
> Assume a similar individual, however this time the individual would be limited to lifting and carrying 10 pounds occasionally, five pounds frequently, and can do all functional aspects of sedentary work. And would be restricted to being on one's feet two out of eight and being seated six out of eight, and having no more than two hours at any time being seated, with the ability to move around at will. Occasional handle, finger, feel, no stooping, kneeling, crawling, heights, ladders, scaffolding and dangerous or hazardous equipment or machine.

AR 96–97. The VE testified that there are sedentary, unskilled security jobs available for such an individual. Specifically, the VE suggested the job of a security monitor, of which there are 1,650 jobs in Minnesota. AR 97.

The ALJ then posed a third hypothetical to the VE: "Assume a similar individual, however this time the individual due to waxing and waning pain symptoms would be unable to maintain persistence and pace and be absent from the work place more than two days a month." *Id.* The VE opined that there would not be any work in the regional or national economy for such an individual. *Id.* The VE then testified that for any of the light, unskilled or sedentary, unskilled jobs there is a 2 or 3 percent off task tolerance. *Id.*

Finally, Stanger's counsel posed the following hypothetical to the VE: "If a person of similar

background to [Stanger] could only sit for a total of two hours per day, could only stand for a total of two hours per day, could only lift 20 pounds occasionally, 5 pounds frequently and would be capable of moderate stress, would there be any jobs in the local or national economy?" AR 97–98. The VE testified that there would not be any jobs in the local or national economy for such an individual interpreting the sit two and stand two as four hours per day total. AR 98.

**D.      The Commissioner's Decision**

On December 14, 2012, the ALJ issued a decision denying benefits. In determining that Stanger was not disabled, the ALJ followed the five-step sequential process established by the Social Security Administration ("SSA"), outlined in 20 C.F.R. § 404.1520.

The first step in the sequential evaluation is to consider the claimant's work history to determine whether he has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the claimant has performed substantial gainful activity, he is not disabled. *Id.* At step one, the ALJ found that Stanger had not engaged in substantial gainful activity during the period from his alleged onset date through his date last insured. AR 58.

The second step in the sequential evaluation is to determine whether the claimant has a severe impairment that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). At step two, the ALJ found that Stanger had the following severe impairments through the date last insured: coronary artery disease, diabetes, degenerative joint disease of the left knee, status post arthroscopic partial medial menisectomy in December 2010, lumbar arthropathy and spondylosis, obesity, renal calculus, pancreatitis with stenting, and sleep apnea. AR 58.

The third step in the sequential evaluation requires the ALJ to determine whether the

claimant has an impairment that meets or equals one of the listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d), .1525, .1526. At step three, the ALJ determined that Stanger did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1. AR 59–60.

If the claimant's impairment does not meet or equal one of the listings in Appendix 1, then the ALJ must make an assessment of the claimant's Residual Functional Capacity ("RFC"). Here, the ALJ concluded that Stanger had an RFC to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) as lifting and carrying 10 pounds occasionally and 5 pounds frequently, standing and/or walking about 2 hours of an 8 hour day, and sitting about 6 hours of an 8 hour day, no more than 2 hours at a time, allowing for a change of position at will, limited to occasional handling, fingering, and feeling, and avoiding stooping, climbing, kneeling, crawling, work at heights, ladders, scaffolds, and dangerous or hazardous equipment and machinery.

Medical–Vocational Rule 404.1567(a); AR 60–61.

In making this determination, the ALJ found Stanger credible in his experience of symptoms with heavy lifting or prolonged walking or standing, but did not find that he is incapable of all work in light of the record as a whole. AR 61, 62–64. The ALJ found the sedentary limitations consistent with the overall evidence. *Id.* The ALJ stated that the RFC takes into account the opinion of the ME, including the occasional manipulative limitations outlined by the ME, in so far as these opinions are consistent with the record. *Id.* The ALJ afforded little weight to Stanger's treating physician, Dr. Lofgren, as his opinion did not identify objective findings to support disability. AR 61.

In the fourth and fifth steps of the sequential evaluation process, the ALJ must determine whether the claimant has the RFC to perform either his past relevant work or any other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1565, .1569. If the ALJ

determines that the claimant can still perform his past relevant work, the ALJ will find that the claimant is not disabled. If the claimant cannot perform his past relevant work, then the "burden shifts to the Commissioner to prove, first, that the claimant retains the [RFC] to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy." *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

At step four, the ALJ found that Stanger was incapable of performing his past relevant work. AR 65. However, at step five, the ALJ determined that even though Stanger is not able to perform his past relevant work, there were jobs that exist in significant numbers in the national economy that a person with Stanger's RFC could perform. AR 65–66. Specifically, Stanger was able to perform representative occupations such as security monitor and credit card information clerk. *Id.* at 65–66. This was based on the VE's testimony, which the ALJ found consistent with the information contained in the Dictionary of Occupational Titles. *Id.*

Based on the ALJ's findings at step five that there were adequate jobs available to Stanger, the ALJ denied Stanger's application for disability benefits and found that Stanger was not under a disability at any time from his alleged onset date through the date last insured. *Id.* at 66.

### III.  STANDARD OF REVIEW

Congress has prescribed the standards by which Social Security disability benefits may be awarded.  "Disability" under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *see also Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938)). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir.1989) (citing *Universal Camera Corp. v. NLRB.*, 340 U.S. 474, 488 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision. *See Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468 (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the

Commissioner's conclusion." *Id*. Therefore, this Court's review of the ALJ's factual determinations is deferential, and we neither re-weigh the evidence, nor review the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996). The Court must "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

## IV. CONCLUSIONS OF LAW

In challenging the ALJ's decision, Stanger argues that the ALJ did not base her finding at the third step on substantial evidence because she failed to fully and fairly develop the record in failing to ask the ME specific questions regarding Stanger's obesity. *Id.* Stanger additionally argues that the ALJ failed to afford Dr. Lofgren's opinion adequate weight in determining Stanger's RFC and failing to identify an examining medical source expressing an opinion inconsistent with Dr. Lofgren. *Id.* at 11–12. After a review of the record, the Court concludes that the ALJ's findings at each step of the sequential analysis were supported by substantial evidence in the record as a whole.

**A.     The ALJ determined that Stanger's impairments did not meet an Appendix 1 listing**

The ALJ relied in part on the ME's opinion in concluding that Stanger did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 59. Before opining that Stanger's impairment did not meet an Appendix 1 listing, the ME noted that Stanger is morbidly obese, has a BMI of 45.17, and is being evaluated for bariatric surgery. AR 93. Nonetheless, Stanger argues that the ALJ failed to "specifically ask the ME when obesity is added to Stanger's other severe impairments if there was an equaling of a listing in the Listing of Impairments." ECF No. 16 at 9. Stanger points to SSR 02-1p, which states:

> Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by

14

>itself, meets the requirements of a listing . . . [or] if there is an impairment that, in combination with obesity, meets the requirements of a listing . . . [or] obesity by itself . . . [or] the combination of impairments is equivalent in severity to a listed impairment.

SSR 02-1p. However, Stanger does not make any contentions that (1) he has another specific impairment that, by itself, meets the requirements of a listing, (2) the combination of his impairments are equivalent to the severity of a listing, (3) a specific impairment in combination with obesity meets the requirement of a listing, or (4) that his obesity alone meets the requirement of a listing, as required by SSR 02-1p. *See* ECF No. 16 at 9–10. Furthermore, Stanger does not contend that the ME failed to consider his obesity. *See id.* Stanger also does not take issue with the ALJ's reliance on the ME's opinion or the ME's review of the medical records. *See id.* Stanger merely argues that the ALJ failed to develop the record by not specifically asking the ME if there was an applicable listing given his obesity.

The ALJ makes the determination of whether a claimant satisfies an Appendix 1 listing based on the record as whole. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2004). This Court defers to the ALJ's determinations so long as substantial evidence in the record supports the decision. *See Flynn*, 107 F.3d at 620. Here, the ALJ determined, after reviewing the entire record and hearing the ME's testimony, that Stanger did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 59. Furthermore, the ALJ questioned Stanger about his weight during Stanger's testimony, heard ME testimony regarding Stanger's weight, and explicitly noted that she considered Stanger's obesity, using the criteria of the musculoskeletal, respiratory, digestive and cardiovascular impairments. AR 59. Accordingly, the ALJ's conclusion that Stanger's obesity in combination with all impairments, a specific impairment, or on its own, did not medically equal the severity of a listed impairment is supported by substantial

evidence in the record.

**B.     Dr. Lofgren's Opinion Was Not Entitled to Controlling Weight**

Stanger argues that Dr. Lofgren's opinion was entitled to controlling weight, and that the ALJ erred when she failed to include Dr. Lofgren's restrictions in the hypothetical posed to the VE, specifically those restrictions Dr. Logfren noted in his November 21, 2012 letter. *See* ECF No. 16 at 11 (citing AR 1118).

An ALJ's RFC determination is based on all of the evidence in the record, including "the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Krogmeier v.Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002). As recognized by the Eighth Circuit, "A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008). Moreover, "a treating physician's opinion does not deserve controlling weight when it is nothing more than a conclusory statement." *Id.*; *see also Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991) (holding that the weight given a treating physician's opinion is limited if the opinion consists only of conclusory statements).

Here, Dr. Lofgren's opinion that Stanger could not work an 8 hour day, 5 days per week was merely a conclusory statement. While laboratory tests and diagnostic studies are appended to the November 21, 2012 letter, the information therein does not provide any support for this opinion. Additionally, as discussed above, such an opinion is inconsistent with the record as a whole. Both state agency non-examining medical consultants as well as the ME concluded from their respective

independent reviews of Stanger's medical records that he was not disabled. Dr. Bolz opined that Stanger could occasionally lift and/or carry up to 50 pounds; frequently lift and/or carry up to 25 pounds; stand and/or walk for a total of six hours per workday; and sit for six hours in a workday. AR 105–106. Dr. Grant opined that Stanger could occasionally lift and/or carry up to 20 pounds; frequently lift and/or carry up to 10 pounds; stand and/or walk for a total of six hours per workday; and sit for six hours in a workday. AR 118. While both Dr. Bolz and Dr. Grant opined that Stanger was limited in his ability to push and/or pull with his lower extremities and had postural limitations, they both also noted no manipulative, visual, communication, or environmental limitations. AR 106, 118–19. Although the ME opined that if Stanger were to work, he would have some lift and carry limitations, as well as limitations with use of both his hands for only occasional handling and fingering and could sit for a total of six hours per day but no longer than two hours at a time, with the ability to get up at will, in his opinion, Stanger did not meet any of the Appendix 1 listings for physical impairments. AR 94.

Moreover, Dr. Lofgren's opinion that Stanger cannot work is not a medical opinion and was specifically prepared for Stanger's attorney for use in this proceeding. *See Krogmeier*, 294 F.3d at 1023 (statements that claimant could not be gainfully employed are not medical opinons but opinions on the application of a statute). Accordingly, any error the ALJ may have made by failing to explicitly discuss Dr. Lofgren's opinion was harmless as Stanger has not presented any evidence that but for this error, the ALJ would have decided differently. *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) ("To show an error was not harmless, [the claimant] must provide some indication that the ALJ would have decided differently if the error had not occurred.").

Accordingly, the Court concludes that substantial evidence supports the ALJ's decision to

give Dr. Lofgren's opinion little weight in light of the record as a whole, in determining that other jobs existed in the national and regional economy that Stanger could perform.

## V. CONCLUSION AND ORDER

If the ALJ's decision is supported by substantial evidence in the record, this Court cannot reverse simply "because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000). Here, substantial evidence supports both the ALJ's RFC determination that Stanger could perform sedentary work and the conclusion that the Appendix 1 listing is not met.

Accordingly, based upon all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 15) be **DENIED**;

2. Defendant's Motion for Summary Judgment (ECF No. 17) be **GRANTED**;

3. The Commissioner's decision be **AFFIRMED** and the case **DISMISSED WITH PREJUDICE**.

DATED: November 23, 2015            *s/Franklin L. Noel*
                                                        FRANKLIN L. NOEL
                                                        United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **December 8, 2015**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.